**INTERNATIONAL INSURANCE COM-
PANY et al., Appellants,**

v.

**Tony JATAINE et al., Appellees.**

**No. 719.**

Court of Civil Appeals of Texas,
Corpus Christi.

May 10, 1973.

Rehearing Denied May 31, 1973.

Dyer, Redford, Burnett, Wray & Woolsey, J. M. Burnett, Corpus Christi, for International Ins.

## OPINION

BISSETT, Justice.

Our opinion of March 15, 1973, is withdrawn, and this opinion reaching the same conclusion is substituted therefor.

This is an appeal from a judgment in favor of Tony Jataine and wife, Anne Jataine Trust, plaintiffs-appellees, growing out of the issuance of a fire and extended coverage insurance policy issued by International Insurance Company, as insurer, to the Gary Maurice Poenisch Trust, as insured, covering a commercial type building. The building was damaged by Hurricane Celia on August 3, 1970. We reverse and render.

Involved in the trial court proceedings were multiple individuals and trusts, two separate buildings that were joined together (each owned by a different person), and two separate insurance policies (each issued by a different company), with each policy covering only one of the buildings. Both buildings were situated in Corpus Christi, Texas.

Tony Jataine and wife, Anne Jataine, the owners of one of the buildings at the time of Celia, and the Jataine Trust, the owner of the other building at that time, sued International Insurance Company (which had previously issued a policy of insurance on the building owned by Mr. and Mrs. Jataine), and Charter Oak Insurance Company (which had previously issued a policy of insurance on the building owned by the Jataine Trust), on insurance contracts to recover for hurricane damages sustained by the two buildings. The plaintiffs also sued Ernest M. Poenisch, Jr., individually, and as Trustee for the Gary Maurice Poenisch Trust, to recover $5,795.90, the proceeds of a draft that was issued by International Insurance Company, which was deposited by the Trustee to the Poenisch Trust account. International Insurance Company filed a cross-action to recover back the said sum of $5,795.90.

The plaintiffs Tony Jataine and wife, Anne Jataine, will be referred to as "Jataines"; Phil Massad, Trustee for the Jataine Trust, as "Jataine Trust"; International Insurance Company as "International"; Ernest M. Poenisch, Jr., individually, and as Trustee for the Poenisch Trust as "Poenisch"; and Charter Oak Fire Insurance Company, as "Charter Oak".

Trial was to a jury which found: (1) International Insurance Company, at the time it issued the draft, knew that the building described in its policy had been sold in July to the Jataines; (2) International agreed to reopen the claim for any additional hurricane damage that was discovered after settlement; and (3) the rea-

sonable cost of repairing such additional damage was $3,250.00.

Charter Oak Insurance Company was given an instructed verdict. Judgment was rendered on the verdict that the plaintiffs recover $3,250.00 from International Insurance Company; that they also recover $5,795.90 from Ernest M. Poenisch, individually, and as Trustee for the Gary Maurice Poenisch Trust, that they recover nothing against Charter Oak Insurance Company, and that International Insurance Company recover nothing on its cross-action.

International and Poenisch have perfected separate appeals. The Jataines and the Jataine Trust do not appeal from the take-nothing judgment that was rendered against them in favor of Charter Oak, nor do they attack the judgment that was rendered by cross points.

Three separate controversies are presented by the pleadings. The Jataines seek to recover (from International) on a policy of insurance that did not name them as insured and which was never assigned to them. They endeavor to recover (from Poenisch) the amount of the draft. International attempts to recover (from Poenisch) the proceeds of the draft. Poenisch occupies the unique position of being appellant as to the action brought by plaintiffs and appellee as to the cross-action.

With respect to the cause of action against International, it was alleged by plaintiffs that Tony Jataine and wife, Anne Jataine, were the owners of the building that had been insured by International Insurance Company under its Policy No. R 179583; that the policy was in force and effect on August 3, 1970, when the building was damaged by a hurricane; that International agreed to pay $5,795.90 of the loss sustained to that building; that a draft for said amount was delivered to Poenisch; that International knew that the property covered by the policy of insurance had been sold to the Jataines "prior to the

hurricane, but nonetheless investigated the loss, ascertained the amount of the damage and paid what it determined to be its proportionate share of the claim"; that International further agreed to pay for any additional damages to the building should such damages become evident thereafter; and, that additional damages to the building were discovered subsequent to initial investigation of the loss, which were not paid. Plaintiffs sought a recovery of $13,300.00. against the defendants International and Charter Oak.

International, in addition to denying generally the allegations of plaintiffs' petition, specially denied that it had any policy of fire and extended coverage insurance in effect that covered Mr. and Mrs. Jataine's building on August 3, 1970, when it was damaged. It admitted that it did have in effect such a policy on that building on July 1, 1970, that insured the Poenisch Trust. However, it also alleged that the building was sold to Mr. and Mrs. Jataine prior to the date of loss, that there was no compliance with the change of ownership condition of the policy, and that, accordingly, it was not indebted to plaintiffs because coverage did not exist in their favor when the building was damaged.

*Facts*

The Jataines purchased a warehouse building, hereinafter called "old building" from the Poenisch Trust in July, 1970. As part of the purchase price thereof, the purchasers executed a note in the original principal sum of $47,277.50, payable to the order of "Ernest M. Poenisch, Jr., Trustee for Gary M. Poenisch Trust", which was secured by a deed of trust and by a vendor's lien covering the old building and the land upon which it was situated. The note had not been paid in full at the time of the loss, when the draft was issued, or when the draft was paid, but was paid in its entirety in July, 1971, which was after the filing of plaintiffs' petition but before the trial of the case.

In or about the year 1966, the Jataines bought land that adjoined the land upon which the old building was situated and conveyed that land to the Jataine Trust. In 1969, or thereabouts, a building, hereinafter called "new building", was constructed thereon. The new building and the old building were tied together by a common wall. An opening was left in the area of abutment of the walls between the two buildings; they were utilized as one building by the Jataines in the conduct of their business. From an inspection, both outward and inward, the buildings appeared to be a single structure. Both buildings were damaged by Hurricane Celia.

At the time the hurricane struck, the old building was owned by the Jataines, and the new building was owned by the Jataine Trust. The Jataines did not have any fire and extended coverage insurance on the old building. The new building was insured with Charter Oak under a policy that named the Jataine Trust as the insured.

On October 29, 1968, International issued its Policy No. R 179583 on the old building that named "Gary Maurice Poenisch Trust, Ernest M. Poenisch, Jr., Trustee" as the insured. It contained the following contractual provision under "Basic Conditions":

"Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring . . . (d) following a change in ownership of the insured property."

The policy was for a three year period and all premiums to October 29, 1970 were paid by Poenisch. On September 22, 1970, Mrs. Shaw, a local recording agent for International, learned that the insured property was sold by Poenisch to the Jataines in July. The policy, pursuant to a request by Poenisch, was cancelled by International on September 23, 1970, and the premium for the period September 23 to October 29, 1970 was refunded to Poenisch. Four days before trial, International tendered a refund of the premium to Poenisch which

covered the period July 1 to September 23, 1970. Such tender was refused. The policy was not assigned to the Jataines nor did International execute an endorsement thereon that named the Jataines as insureds thereunder.

Following the hurricane on August 3, 1970, the Jataines reported the damage to a Mr. Bill Chapman, an agent who represented Charter Oak. Some three weeks later, Mr. Chapman and an adjuster for Charter Oak initiated an investigation of the damage to the premises. They assumed that the structure (both buildings) constituted a single building that had been insured under Charter Oak's policy. They valued the structure at over $90,000.00, and the visible damage thereto was determined to be approximately $11,000.00. Because the Jataine Trust had coverage of only $50,000.00 under the Charter Oak policy, Chapman, sometime during his investigation, told Tony Jataine that the structure, being underinsured, was subject to a penalty under the 80% co-insurance clause which would reduce the amount payable as damages under the Charter Oak policy to an amount less than the actual damages sustained to it.

On October 2, 1970, Tony Jataine, acting for the Jataine Trust, signed a proof of loss, addressed to Travelers Insurance Company (which included Charter Oak), wherein it was stated that the total damage to the premises was $10,072.44, and the amount claimed under the Charter Oak policy was $6,648.29. According to Chapman, once a proof of loss had been approved, generally the company would issue a draft for the amount of money claimed therein, but this was not done in this instance because the adjuster called Charter Oak and said "there had been other developments; there appeared another policy in force". Tony Jataine himself requested that the company "hold up". Nothing further developed concerning this proof of loss.

At some indeterminate time during the unfolding of the above circumstances, Tony Jataine telephoned Poenisch and told him that he (Jataine) did not have insurance on the old building at the time it was damaged by the hurricane. He inquired as to whether Poenisch would permit him to use the Poenisch Trust policy with International in collecting for storm damages so that the owner of the new building (the Jataine Trust) would not be penalized under the co-insurance penalty provision contained in the Charter Oak policy. Poenisch agreed. He delivered the policy to Tony Jataine "so he could take the policy to help him out".

The matter of storm damage was then reinvestigated by a Mr. Reynolds and a Mr. Lyles, employees of General Adjustment Bureau, both of whom were then acting as adjusters for both Charter Oak and International. Following the completion of their investigation, $4,492.94 was allocated to Charter Oak as its proportionate share of the storm damage, and $5,795.90 was allocated to International as its proportionate share thereof. The adjusters did not separately value the two buildings. They considered the new building and the old building as one structure, under one ownership, that was insured with both International and Charter Oak under two policies. Charter Oak paid the $4,492.94 to the Jataine Trust. International paid the $5,795.-90, the recovery of which is sought by it in this lawsuit.

In January, 1971, it was learned that the structure had sustained damage to the roof in addition to the damage discovered by the adjusters. The proof at the trial showed that such additional damage was confined to the old building.

The only proof of loss that was presented to International was signed "Jataine Trust", by "Tony Jataine". It was dated November 20, 1970. It constituted a claim for damages to the old building in the amount of $5,795.90, under International's policy No. R 179583. The proof of loss contained several statements of fact that were factually incorrect, including the unequivocal representations that at the time

of the loss the insured under International's policy was "Jataine Trust (Gary Maurice Poenisch TR)", that it was the sole owner of the property insured at the time of loss, and that no other person or persons had any interest therein or incumbrance thereon. As a matter of fact, the insured property at that time was owned by Mr. and Mrs. Jataine, and it was then under mortgage to Poenisch.

A draft was issued by International on December 17, 1970, and was sent to Mrs. Shaw. The $5,795.90, evidenced by the draft, was in "final" settlement of the loss that occurred on "8–3–70". The drawee was named therein:

"Gary Maurice Poenisch—
  Jataine Trust . . . .".

Mrs. Shaw was called as a witness by Poenisch. Upon receipt of the draft, she noticed that "Jataine Trust" appeared on the face thereof. She testified:

" . . . I called Mr. Poenisch and asked if that was correct, I thought the company probably made a mistake in issuing the check, but he told me that was all right, he was agreeable, Jataine Trust had never been told to endorse that name, so I took the check to him".

Poenisch testified that Mrs. Shaw told him:

"She said she had the check, she said, 'Ernest, the check is not made out right', I said 'Well, how is it made out?' She said 'It is made out to Gary Maurice Poenisch Jataine Trust', I said, 'It's not made out right, you are sure right', she said 'Send it on to Tony or send it to you?' And I said, 'By all means, send it to me.' "

He further testified:

"I told Tony the check wasn't made out properly, and the Jataine Trust was on there, it shouldn't be on there, the check should be made out like the policy."

Mrs. Shaw complied with the request made by Poenisch. The first endorsement appearing on the back of the draft is in words, as follows: "Gary Maurice Poenisch-Jataine Trust". The next endorsement thereon reads, as follows: "Ernest M. Poenisch, Jr., Trustee". The draft was deposited by Ernest M. Poenisch, Jr. on February 1, 1971 to the Poenisch Trust account. It was paid by International on February 3, 1971.

At all times pertinent to this suit, Ernest M. Poenisch, Jr., was Trustee for both the Jataine Trust and for the Poenisch Trust. There is no showing of the date that Phil Massad became Trustee for the Jataine Trust.

*The Controversy between the Jataines and International*

International, by its first point, assails that part of the judgment which awards the Jataines and the Jataine Trust $3,250.-00. It contends that a contractual relationship between it and the Jataines, or between it and the Jataine Trust, was not established, and that the change of ownership condition in the policy was not waived by it.

The Jataines and the Jataine Trust defend the award of $3,250.00 to them solely on the ground that International waived its right to insist upon compliance with the change in ownership condition of the policy.

The Jataine Trust did not have an insurable interest in the old building. It was not named as an insured under International's policy. It is an entity that is a person in law, and as such, is a person that is separate, distinct and apart from the persons of the Jataines. The Jataine Trust owned the new building; it did not own any interest in the old building. The Jataines owned the old building; they did not own any interest in the new building. This appeal is not concerned with damages

or claims for damages to the new building. Therefore, under the record before us, the judgment that was entered in favor of the Jataine Trust against International for $3,250.00 cannot be sustained on any ground or theory.

The Jataines sued for themselves and in their own right, to enforce the damage provisions of the policy that named the Poenisch Trust as the insured. The change in ownership condition, as far as the Jataines are concerned, is a condition precedent which must be fulfilled before they can recover on the policy. Perry v. Little, 377 S.W.2d 765 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.); Toland v. Kaliff, 435 S.W.2d 260 (Tex.Civ.App.—San Antonio 1968, n.w.h.). On the other hand, the foregoing provision is a condition subsequent with respect to International, which, if not complied with, avoids liability on the policy in an action brought by the Jataines (the new owners) to recover thereunder. Commercial Union Ins. Co. v. Stanmike Investment Co., 475 S.W.2d 295 (Tex.Civ.App.—Waco 1971, writ ref'd n.r. e.).

International plead non-compliance with the condition as an affirmative defense to Jataines' asserted cause of action. Therefore, absent waiver, the Jataines, who alleged contract coverage under the policy, were required to prove an assignment to them of the policy with the written consent of International endorsed thereon. They did not meet their burden of proof. Hardware Dealers Mut. Ins. Co. v. Berglund, 393 S.W.2d 309 (Tex.Sup.1965); National Union Fire Ins. Co. v. Cox, 393 S.W.2d 939 (Tex.Civ.App.—Houston 1965, n.w.h.). The policy stood as originally issued when the loss occurred.

Waiver has been defined by our Supreme Court "as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it." Massachusetts Bonding & Ins. Co. v. Orkin Exterm. Co., 416 S.W.2d 396, 401 (Tex. Sup.1967).

One cannot waive that which he does not know, or where he has acted under a misapprehension of the facts. Stowers v. Harper, 376 S.W.2d 34, 39 (Tex. Civ.App.—Tyler 1964, writ ref'd, n.r.e.); Bering Mfg. Co. v. W. T. Carter & Bro., 255 S.W. 243, 252 (Tex.Civ.App.—Beaumont 1923), affirmed 272 S.W. 1105. A waiver does not create new rights, but merely operates to preserve existing rights. Minnesota Mutual Life Ins. Co. v. Morse, 487 S.W.2d 317 (Tex.Sup.1972); Continental Casualty Company v. Bock, 340 S. W.2d 527 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.). A person may not create coverage by relying upon the doctrine of waiver when he is not otherwise insured under the policy. Washington Nat'l Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165 (1937); Great American Reserve Insurance Co. v. Mitchell, 335 S.W.2d 707 (Tex.Civ.App.—San Antonio 1960, writ ref'd); Boyd v. Travelers Insurance Company, 421 S.W.2d 929 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.). Conditions, events or happenings going to the coverage of the policy, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action, without an express agreement to that effect supported by a new consideration. Powell v. American Casualty & Life Co., 250 S.W.2d 744 (Tex.Civ.App.—Dallas 1952, writ ref'd n. r.e.); 113 A.L.R. 857, 858.

The Jataines earnestly contend that the change of ownership condition in the policy was waived by International as a consequence of the following factors:

"Investigation of the loss, reaching a settlement with the claimant, preparing the proofs of loss, issuing a draft for the amount agreed upon, and actually making payment of the claim."

They rely primarily on Fidelity Lloyds of America v. Geddie, 116 Tex. 656, 296 S.W. 500 (Tex.Comm'n App. 1927, opinion adopted); British America Assur. Co. v. Francisco, 58 Tex.Civ.App., 123 S.W. 1144

(1910); and New York Underwriters Ins. Co. v. Brittain, 62 S.W.2d 168 (Tex.Civ. App.—Beaumont 1933, writ dism'd). Those cases are distinguishable on the facts from the case at bar.

In the Geddie case, the theft insurance contract named Geddie (the owner of the insured automobile) as the insured with a loss payable clause to his mortgagee. The automobile was stolen. Geddie breached a condition of the policy and the insurance company, even though it could have forfeited the policy, paid the mortgagee for the loss sustained by it. The court held that such voluntary act by the insurer constituted a waiver of its right to cancel the policy with respect to the loss sustained by Geddie. Here, the Jataines were never insureds under the policy.

In the Francisco case and in the Brittain case, the agent of the insurance company, before any loss was sustained, had been informed that the property had been sold, was aware of the identity of the purchaser, and had been told that the purchaser and new owner desired to maintain the existing insurance on the property. None of these elements are present here.

In the instant case, none of the adjusters testified. There is no evidence that any of them ever saw International's policy; Chapman, the agent for Charter Oak, admitted that he did not. All of the adjusters worked under the mistaken belief that the structure (both buildings) was owned by the Jataine Trust. Proofs of loss, dated November 20, 1970, signed and filed by Tony Jataine, one with Charter Oak and one with International, represented that the Jataine Trust was the owner of the damaged premises. Only Chapman, of all the persons who had anything to do with the investigation of the hurricane damage, knew of the true ownership of the buildings; he did not represent International in any way. It matters not who prepared the proofs of loss. They were each signed by Tony Jataine; it is he who stated to the respective insurance companies that the property covered by each of the two policies was owned by the Jataine Trust on August 3, 1970, and he, alone, is responsible for all of the statements and representations contained in the proofs of loss.

■ In answer to the assertions made by the Jataines that waiver resulted from the adjusters "investigation of the loss, reaching a settlement with the claimant, and preparing the proofs of loss", we quote from 45 C.J.S. Insurance § 1102, p. 1339, as follows:

> "An adjuster's authority is usually limited, however, to the ascertainment and adjustment of the loss; and he has no power merely as such, in the absence of some evidence as to his authority, to alter the contract, or waive any of its conditions; . . . ."

There is no evidence in the record that any adjuster for International was authorized to waive any condition in the policy. On September 22, 1970, International was informed by Poenisch that the building had been sold to the Jataines in July; on November 20, 1970, the proof of loss informed International that the building was owned by the Jataine Trust on the date it was damaged. There is no evidence that any of International's adjusters, or agents, with full knowledge of the true facts, did any unequivocal act that showed an intention to waive the change of ownership condition in International's policy. There has never been a settlement with the Jataines as a claimant. They never claimed that International owed them anything until this suit was filed. A draft was never issued that was made payable to the Jataines. The policy had already been cancelled when the Jataine Trust filed the proof of loss with International. The subsequent issuance of the draft, its delivery to Poenisch and its payment were acts that were performed when the policy was no longer in existence. The factors that are argued by the Jataines do not create waiver on the part of International.

The Jataines do not plead any facts that would estop International from defending the action brought against it because of failure to comply with the change in ownership condition in the policy. They do not allege anything as grounds for a dispute as to the coverage of the policy; instead, they plead that the policy was "in full force and effect on August 3, 1970", when their building was damaged. International does not plead or claim that there has been a forfeiture; it simply pleads and contends that coverage under the policy was never extended to the Jataines because of the failure to comply with the change in ownership condition of the policy.

The Jataines never showed that they were entitled to any existing right under the policy at any time, or that they were ever insured thereunder. What is here sought by them, is not to prevent a forfeiture of an existing contract of insurance, but to extend coverage of that policy by waiver to parties who were not named in the original contract as the insured, who never notified the insurer prior to the loss that they had purchased the property, who never told International's agent that they wanted to maintain the existing insurance on the building, who never requested or obtained an assignment of the policy, or obtained an endorsement thereon that named them as the insured, who never paid any premium on that policy, and who never filed a claim thereunder. The doctrine of waiver does not go that far.

Moreover, waiver is an independent ground of recovery or defense, must be specially plead, and where it is raised by the evidence but is not conclusively established, must be submitted to the jury for determination. Middle States Petroleum Corp. v. Messenger, 368 S.W.2d 645 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.); John Hancock Mutual Life Insurance Co. v. Esparza, 286 S.W.2d 695 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.). Here, the Jataines and the Jataine Trust did not specially plead waiver of the change in ownership condition of the policy as a ground for recovery in the action brought by them or as a defense to the cross-action filed against them. The matter of waiver of the condition was not tried by implied consent; it was not established as a matter of law by the evidence, and an issue thereon was neither requested of the trial court nor submitted to the jury. Therefore, the matter of waiver, if any, was waived. Glen Falls Insurance Company v. Peters, 386 S.W.2d 529 (Tex.Sup. 1965).

We conclude that under the record here presented International did not waive any condition in the policy. Maryland Casualty Co. v. Palestine Fashions, Inc., 402 S.W.2d 883 (Tex.Sup.1966); Lowe v. Michigan Fire & Marine Ins. Co., 236 S.W.2d 168 (Tex.Civ.App.—Beaumont 1950, writ ref'd); Federal Building & Sales Co. v. Commercial Standard Ins. Co., 381 S.W.2d 940 (Tex.Civ.App.—Waco 1964, writ ref'd n.r.e.); Bucher v. Employers Casualty Company, 409 S.W.2d 583 (Tex.Civ.App. —Fort Worth 1966, n.w.h.). International's first point is sustained.

International, by its second point, says that there is no evidence to support the jury finding to Special Issue No. 2 (that International agreed "to re-open the claim for additional damage caused by Hurricane Celia that may be discovered to the old building after the settlement"). We agree. The only evidence of an agreement to re-open the claim if additional damages to the buildings were found stems from the conversation between Tony Jataine and Bill Chapman, who did not represent International, but who represented Charter Oak. There is no evidence that anyone representing International made any agreement with Tony Jataine to re-open the claim if additional damage was later discovered. International's second point is sustained.

*The Controversy Between International and Poenisch*

International, by its fourth point, contends that "the trial court erred in denying it judgment against Poenisch and the Poenisch Trust for the $5,795.90 paid by mistake, since there was no coverage afforded by the policy of insurance originally issued by International to the Poenisch Trust after July 1, 1970, on which date the Poenisch Trust sold the building covered by said policy to the Jataines".

The cross action by International named the Jataine Trust, the Poenisch Trust, and their respective Trustees, as cross-defendants. It was alleged, in part, that the policy, at the request of Poenisch, was cancelled on September 23, 1960; that "on or about October 6, 1970, a purported claim for damages to the property above described formerly covered by said policy was made to the local agent of cross-plaintiff, who under the mistaken belief that the policy was in effect as of the date of August 3, 1970, the date of Hurricane Celia, referred such claim to adjusters, who inspected the loss, likewise acting under the same mistake and belief that the property was insured as of August 3, 1970, and based upon such inspection, ascertained the damages to said property and a check for $5,795.90 in settlement of such purported loss was issued to Gary Maurice Poenisch-Jataine Trust, dated December 17, 1970"; that Poenisch "wrongfully and by reason of his misrepresentation obtained from cross-plaintiff the sum of $5,795.90, to which he is not entitled under the policy nor under the law, and which he has obtained and holds as the result of a constructive fraud upon cross-plaintiff"; that "said check was erroneously issued by cross-plaintiff in the belief that its policy was in full force and effect on August 3, 1970, insuring Ernest M. Poenisch, Jr., Trustee"; and, that "Ernest M. Poenisch, Jr., who is holding said funds, has been unjustly enriched".

Poenisch's answer to the cross action consisted of a general denial and pleas of waiver, estoppel and accord and satisfaction. Among other contentions, Poenisch claims that International admitted in its pleading "that a check for $5,795.90 in settlement of such purported loss was issued to the Gary Maurice Poenisch Trust" and that "there was no requirement that Poenisch Trust prove what International was willing to admit by its pleadings". That contention cannot be sustained; the cross-action alleged that the check, because of a mistake, was issued in settlement for the purported loss to "Gary Maurice Poenisch-Jataine Trust", not to "Gary Maurice Poenisch Trust".

It is not necessary for an insurer to return the unearned premium in order to take advantage of a provision that terminates liability upon the happening of certain named events or the failure to perform specified contractual duties. Lowe v. Michigan Fire & Marine Ins. Co., supra; Federal Building & Sales Co. v. Commercial Standard Ins. Co., 381 S.W.2d 940 (Tex.Civ.App.—Waco 1964, writ ref'd n.r. e.); Rio Grande Nat. Life Ins. Co. v. Hardware Dealers Mutual Fire Ins. Co., 209 S.W.2d 654, 657 (Tex.Civ.App.—Amarillo 1948, writ ref'd n.r.e.). The contention by Poenisch that there was a waiver because International did not refund the premium "for the period of time following the sale from Poenisch to Jataine" is without merit.

Estoppel arises "where by fault of one, another has been induced to change his position for the worse". Wirtz v. Sovereign Camp, W.O.W., 114 Tex. 471, 268 S.W. 438, 441 (1925). Conduct of the insurer after the loss does not constitute a basis for estoppel. Federal Building & Sales Co. v. Commercial Standard Ins. Co., supra. No issue of estoppel is raised by the evidence in this case. Poenisch, as Trustee for the Poenisch Trust, did not change his position for the worse because of anything that was said or done by International, its adjusters, or its agents. He did not credit the Jataines' mortgage note

given on the purchase price of the old building with the $5,795.90. He did not use any part of the funds to repair the damage to the old building caused by Celia. The assertion by Poenisch that International is "estopped to assert that the policy was not in full force at the time of hurricane Celia when the loss in question was sustained" is also without merit.

Poenisch did not make a claim or demand upon International for payment of damages caused to the old building. The draft did not represent money voluntarily paid in adjustment or settlement of a claim existing on December 17, 1970 between the Poenisch Trust and International. There was never any dispute between those parties prior to the issuance of the draft as to coverage, the loss in question, or as to International's liability therefor. Consequently, the pleading and argument that the alleged "settlement of such claim" by International with the Poenisch Trust "amounts to a full compromise and settlement of all matters then in issue", or "that it amounted to an accord and satisfaction" is not supported by the evidence. None of the elements of a valid accord and satisfaction appear in this record. See Jenkins v. Henry C. Beck Company, 449 S.W.2d 454 (Tex.Sup.1970); 1 Tex.Jur.2d Accord and Satisfaction, § 6, pp. 212–213, and § 45, pp. 244–245.

Poenisch also argues that the Poenisch Trust is entitled to retain the $5,795.90 because it was a mortgagee with respect to the old building on the date of the loss. That argument cannot be sustained. The Poenisch Trust was insured by International's policy as owner of the building. Its interest in the building was reduced by the sale from that of owner to that of mortgagee. There was a material change in ownership of the insured property subsequent to the date of issuance of the policy and prior to the date of loss. The Jataines and not the Poenisch Trust must be regarded as the owner of the insured property at the time of the loss within the

meaning of the policy. Humphrey-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296 (1923); Lowe v. Michigan Fire & Marine Ins. Co., supra. We conclude that the facts of this case conclusively show that the coverage initially existing under the policy in favor of the Poenisch Trust terminated in July, 1970, and that International was relieved from any liability to the Poenisch Trust from and after the date of sale. Nothing that transpired thereafter revived or reinstated the policy for the Poenisch Trust.

We next consider the issue of mistake. International argues that it was mistaken as to the ownership of the old building at the time of Celia; that it was mistaken as to the drawee entitled to the draft; that it made a mistake in so issuing the draft; that the draft was issued and payment made under the mistaken belief that the policy was still in force when the hurricane struck, when in fact it was not; and, that the mistake occurred through the machinations of Tony Jataine in attempting to avoid a penalty under the Charter Oak policy.

Poenisch says there was no evidence that the $5,795.90 was paid through mistake of fact; that if there was evidence from which the jury might have found mistake of fact that such ground of recovery was waived by International by failing to request the submission of a jury issue relating thereto; and, that if there was a mistake of fact, it was not of a material fact.

The only basis for the issuance of the draft is found in the proof of loss that was filed by Tony Jataine in behalf of the Jataine Trust. International was induced to issue the draft solely on the statements and representations contained in that proof of loss. Such statements of fact were material to the question of ownership and of identity of the owner of the old building at the time of Celia.

It is settled rule of law that an insurance company which makes payment

under a policy because of an erroneous belief induced by a mistake of fact that the terms of the insurance contract required such payment is entitled to restitution from the person receiving such payment, unless it has agreed to assume the risk of mistake, or unless there is some reason which makes it inequitable or inexpedient for restitution to be granted. The reason for the rule is that the person who has received money under such circumstances ought not to retain what in good conscience does not belong to him as against the person to whom in good conscience it does belong. Hull v. Freedman, 383 S.W.2d 236 (Tex. Civ.App.—Fort Worth 1964, writ ref'd n. r.e.); Benson v. Travelers Insurance Company, 464 S.W.2d 709 (Tex.Civ.App.—Dallas 1971, n.w.h.); Capital National Bank in Austin v. Wootton, 369 S.W.2d 475 (Tex. Civ.App.—Austin 1963, writ dism'd, w.o.j.); Prigmore v. Hardware Mutual Ins. Co. of Minnesota, 225 S.W.2d 897 (Tex.Civ. App.—Amarillo 1949, n.w.h.)

The legal principles which the courts formulate as a basis for their holdings in cases involving the rights of an insurer where payments are made under a mistake of fact are stated in 167 A.L.R. 470, 472, as follows:

"(1) An insurer who made a payment under a mistake of fact may, as a rule, recover such payment, even if its mistake was due to its lack of care, unless the payee has so changed his position that it would be unjust to require a refund.

(2) This principle is subject to the limitation that no recovery can be had by the insurer where, at the time payment was made, there was some doubt as to the existence of the fact from which the obligation of the insurer arose or where the mistake of fact related to a warranty in the original contract."

In accord are Singer v. St. Paul Mercury Insurance Company, 478 S.W.2d 579 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.) and Hodges Food Stores, Inc.

v. Gulf Insurance Company, 441 S.W.2d 309 (Tex.Civ.App.—Dallas 1969, n.w.h.). Here, the Poenisch Trust was not the "payee"; it had not changed its position so that it would be unjust to require a refund. No obligation on the part of International existed in favor of the Poenisch Trust at the time the draft was issued and paid. The mistake of fact did not relate to a warranty in the original contract of insurance.

In applying the rules that should govern the granting of relief for a mistake of fact, ". . . it has been the constant practice of courts of chancery to grant relief, where the case did not depend upon a mere mistake of law, stripped of all other circumstances, but upon an admixture of other ingredients, going to establish misrepresentation, imposition, undue confidence, undue influence, or advantage taken of another's situation. . . ." Moreland v. Atchison, 19 Tex. 303, 310–311 (1857).

It is now firmly established that the mere fact that a mistake of fact was due to ordinary negligence on the part of the person who made the payment will not preclude a recovery. James T. Taylor, Etc. v. Arlington Ind. School District, 160 Tex. 617, 335 S.W.2d 371 (1960); City Bank of Houston v. First National Bank of Houston, 45 Tex. 203, 217 (1876). There is no evidence of culpable negligence on the part of International or any of its agents.

There was in existence at all times two distinct trusts, the "Gary Maurice Poenisch Trust" and the "Jataine Trust", each of whom is a person in law that is separate and apart from the other. There is no evidence of the existence of a "Gary Maurice Poenisch-Jataine Trust". The draft was not made out to either the Poenisch Trust, the Jataines, the Jataine Trust, or to "Ernest M. Poenisch, Jr., Trustee". The means whereby the funds evidenced by the draft wound up in the Poenisch Trust account was by endorsement. The first endorsement on the back of the draft shows

that it was actually endorsed in the exact name of the drawee. Poenisch accomplished that endorsement. No reason is shown whereby International should have refused payment because of any irregularity in the endorsement when the draft was presented. It had been regularly endorsed by the named drawee to "Ernest M. Poenisch, Jr., Trustee". There is no pleading and no evidence that "Ernest M. Poenisch, Trustee" was authorized to endorse the name "Gary Maurice Poenisch-Jataine Trust" on the draft, or to act for that entity in any manner. The draft was not delivered to Poenisch in any representative capacity for the drawee named therein, nor was it delivered to him as Trustee for the Poenisch Trust, or as Trustee for the Jataine Trust. It was delivered to him at his own request, at a time when he admitted that a mistake of fact had been made in naming the drawee therein.

Poenisch further argues that even though the money was paid because of a mistake of fact a recovery may not be had because such mistake was unilateral and not mutual. While we agree with the general principle of law asserted concerning the necessity for mutuality of mistake of fact as affording relief in most instances, we cannot agree that such rule of law applies to International's cross-action. Poenisch does not charge that such unilateral mistake was induced by fraud, imposition, undue influence or betrayal of confidence on the part of International. See Benson v. Travelers Insurance Company, supra. Here, the insurance company simply seeks to recover back money that it claims was paid to a recipient who has no legal right to it.

It was recognized in James T. Taylor, Etc. v. Arlington Ind. School District, supra, that "relief will be granted against a unilateral mistake when the conditions of remedial mistake are present". The conditions were stated to be:

". . . (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i. e., rescission must not result in prejudice to the other party except for the loss of his bargain. . . ."

Those conditions are present in this case. In addition, the court further noted:

". . . There may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties. . . ."

The latest expression by the Supreme Court that we have found with respect to relief from a unilateral mistake of fact is in the recent case of Monarch Marking System Co. v. Reed's Photo Mart, Inc., 485 S.W.2d 905 (Tex.Sup.1972), where it was held that one of the usual prerequisites to the granting of relief for a unilateral mistake is where "the parties can be placed in status quo in the equity sense, i. e., rescission must not result in prejudice to the other party except for the loss of his bargain". That holding applies to this case. A return of the money will not result in a loss of any bargain to the Poenisch Trust, and such return to International will put both International and Poenisch in exactly the same situation that each was in prior to the transaction in question.

Relief for a remedial mistake of fact is warranted in the case at bar. The Poenisch Trust suffered no pecuniary loss as a result of storm damage to the old building, has acquired a windfall, and would be unjustly enriched if it were permitted to retain the funds. The Poenisch Trust still has the money and has not changed its position to its detriment.

It was conclusively shown that International operated under a misapprehension of material facts. The pleading in the cross

action that International's agent and the adjuster acted under a mistaken belief and that the draft was erroneously issued in the belief that the policy was in force on August 3, 1970 are sufficient allegations of mistakes of fact. The proof demonstrated that the draft was issued and paid because of a mistake of fact. That was proved as a matter of law. International is entitled to recover the funds from Poenisch. International's fourth point is sustained.

### The Controversy Between Poenisch and the Jataines

We next consider the appeal by Poenisch wherein complaint is made of the judgment that was rendered against Ernest M. Poenisch, individually and as Trustee for the Poenisch Trust. Plaintiffs alleged that "the draft of International Insurance Company was made payable to Tony and Anne Jataine as well as the Defendant, Ernest M. Poenisch, Jr., as Trustee for his son". The proof was otherwise. They further alleged that the draft was delivered to Poenisch; that he was a mortgagee of the building, who would not use the $5,795.90 for making repairs to the building, who would not apply the money on the balance owed on the purchase price of the property, who would not deliver the draft to plaintiffs, and who claimed the proceeds of the draft as his own money and not as mortgagee.

There are no allegations as such that Poenisch became a trustee for the account of plaintiff and any holding that plaintiffs sued to impress a trust upon the proceeds of the draft would have to be by implication. The only relief prayed for against Poenisch is for punitive damages in the amount of $15,000.00, attorneys' fees, court costs, and "for such other relief" to which they are entitled.

Our holding that International is entitled to recover back the said $5,795.90 pretermits any lengthy discussion of the points raised by Poenisch. It necessarily follows that we would first be required to hold that Poenisch is entitled to retain the proceeds of the draft before we could reverse the judgment rendered in favor of the Jataines. This we do not hold. We do, however, consider their first point wherein they contend that there was "no evidence that the right to receive insurance proceeds from International Insurance Company had been assigned or transferred" to the Jataines.

It is undisputed that the $5,795.90 represented insurance money that was paid under International's policy for hurricane damages to the old building. The Jataine Trust is not entitled, under the record, to such funds. The Jataines were uninsured under International's policy at the time of the loss; they did not establish any legal right to the proceeds to the draft. Poenisch's first point is sustained. In view of this holding, it is not necessary that we consider Poenisch's remaining points.

The judgment of the trial court awarding the plaintiffs, Tony Jataine and wife, Anne Jataine, and Phil Massad, Trustee for the Jataine Trust, a recovery against the defendant International Insurance Company for the sum of $3,250.00, and a recovery against the defendant, Ernest M. Poenisch, Jr., individually and as Trustee for the Gary Maurice Poenisch Trust, for the sum of $5,795.90, and that International Insurance Company recover nothing on its cross-action, is reversed, and judgment is here rendered that the plaintiffs recover nothing against the defendants, International Insurance Company and Ernest M. Poenisch, Jr., individually and as Trustee for the Gary Maurice Poenisch Trust, that the cross-plaintiff International Insurance Company recover nothing on its cross-action against the Jataine Trust, and that the cross-plaintiff International Insurance Company recover on its cross-action against the cross-defendant Ernest M. Poenisch, Jr., individually, and as Trustee

for the Gary Maurice Poenisch Trust, the sum of $5,795.90, together with interest thereon at the rate of six per cent (6%) per annum from December 8, 1971, until paid.

NYE, C. J., not participating.