HIGHLANDS INSURANCE GROUP, INC., a Delaware corporation, and Highlands Insurance Company, a Texas corporation, Plaintiffs,

v.

HALLIBURTON COMPANY, a Delaware corporation, and Kellogg Brown & Root, Inc., a Delaware corporation, Defendants.

C.A. No. 17971.

Court of Chancery of Delaware, New Castle County.

Submitted: Dec. 5, 2003.
Decided: Dec. 31, 2003.

Stephen E. Herrmann, Daniel A. Dreisbach, Richards, Layton & Finger, P.A., Wilmington, DE; William C. Wilkinson, John T. Sunderland, O. Judson Scheaf, III, Thompson Hine, L.L.P., Columbus, OH, for the Plaintiffs.

Richard D. Allen, James G. McMillan, III, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Harry M. Reasoner, John L. Murchison, Jr., Karl S. Stern, Bruce A. Blefeld, Vinson & Elkins, L.L.P., Houston, TX; Michael G. Zanic, Kirkpatrick & Lockhart, L.L.P., Pittsburgh, PA, for the Defendants.

**OPINION**

LAMB, Vice Chancellor.

**I.**

In an earlier opinion, the court held that certain insurance policy contracts between the parties to this litigation expired upon the occurrence of a corporate restructuring in which they were involved. The insurer has now moved for summary judgment seeking to recover sums it paid after the restructuring in the mistaken belief that those policies continued in force.

Based on the earlier opinion and construction of the contracts that govern the restructuring, the court now concludes that the insurer is entitled to recover for amounts that it mistakenly paid. This entitlement arises both under a written indemnification agreement between the parties and, in part, from principles derived from the law of restitution. Those same sources of recovery do not, however, support the insurer's effort to shift the cost of this or related litigation to its former insured.

**II.**

Highlands Insurance Group, Inc. is a Delaware insurance holding company that, through its wholly owned subsidiary, Highlands Insurance Company (together "Highlands"), is engaged in the commercial property and casualty insurance business. Defendants Halliburton Company and Halliburton Energy Services, Inc. (together "Halliburton") are both Delaware corporations. Co-defendant Kellogg, Brown & Root ("KBR") is a Delaware corporation wholly owned by Halliburton.

Highlands was incorporated in 1957 by KBR to serve as its wholly owned (or captive) insurance company. Halliburton later acquired KBR and its subsidiary Highlands. Between 1958 and 1986, Highlands issued 29 fixed-premium general liability policies (the "Fixed Cost Policies") to KBR. These were occurrence basis policies that provided coverage for liabilities caused by an occurrence during the policy term. In all of them, Highlands bore the

insurance risk. From 1987 through 1999, Highlands issued to KBR 12 retrospectively rated general liability insurance policies (the "Retrospective Policies"). These were also occurrence basis policies, but posed no insurance risk to Highlands because the premiums adjusted up or down based on the actual loss experience both during and after the policy period.

Effective January 1996, Halliburton spun off all the Highlands shares by distributing them to Halliburton shareholders (the "Spinoff"). After the Spinoff was completed, KBR continued to submit to Highlands claims made by third parties that were thought to be covered by one or more of the Highlands insurance policies then in effect. In connection with the briefing on the present motion, the parties refer to two categories of payments made by Highlands with respect to such claims after the Spinoff: (i) the 1987 KBR Asbestos Claims Payments and (ii) the Post–Spinoff Terminated Policy Payments. The second of these will be discussed later in the opinion.

The KBR Asbestos Claims Payments grew out of the fact that after the Spinoff was completed, KBR reported to Highlands numerous claims for personal injury resulting from exposure to asbestos on KBR construction sites or from exposure to asbestos or products containing asbestos handled by or distributed by KBR. Highlands and KBR disagreed over the proper allocation of these claims to specific policy years but tentatively agreed, pending later resolution, to allocate all of those claims to the 1987 Retrospective Policy year. Over the next several years, Highlands made payments in relation to these claims totaling $4,898,321. However, Halliburton refused to reimburse Highlands for any of these amounts under the 1987 Retrospective Policy, taking the position that the claims are properly allocated to one or more of the Fixed Cost Policy years.

Because the parties were ultimately unable to resolve the allocation issues raised by the category of asbestos claim payments, Highlands filed suit in this court against Halliburton and KBR on April 5, 2000.[1] On March 21, 2001, then-Vice Chancellor Jacobs granted Highlands' motion for judgment on the pleadings, concluding that the Spinoff terminated the Fixed Cost Policies and, therefore, that Highlands was not responsible to provide any coverage under these policies after the date of the Spinoff (the "2001 Decision").[2] The Delaware Supreme Court affirmed on March 13, 2002.[3]

The 2001 Decision did two things. First, it put the dispute over the 1987 KBR Asbestos Claims Payments on an entirely new footing. In light of the 2001 Decision, Highlands now argues that it should no longer matter whether the claims underlying those payments are attributable to a Fixed Cost Policy year or a Retrospective Policy year. In either case, Highlands argues, Halliburton has a clear contractual obligation to indemnify it for those payments. Any claim properly allocated to the 1987 policy year or later would be subject to the premium adjustment mechanism in that Retrospective Pol-

1. A few weeks later, Halliburton sued Highlands in the District Court of Harris County, Texas alleging a claim for breach of contract. The first amended complaint in that case raises issues about Highlands' duty to defend and indemnify Halliburton with respect to the 1987 KBR Asbestos Claims.

2. *See Highlands Ins. Group, Inc. v. Halliburton Co.,* 2001 WL 287485 (Del.Ch. Mar. 21, 2001).

3. *Halliburton Co. v. Highlands Ins. Group,* 801 A.2d 10 (Del.2002) (TABLE).

icy. Any claim allocated to a Fixed Cost Policy year, Highlands argues, would be encompassed within the scope of the indemnification given by Halliburton in connection with the Spinoff.

In addition, the 2001 Decision gave rise to the second category of payments now at issue, *i.e.*, payments totaling $1,968,401 made by Highlands after the Spinoff on claims that occurred during the term of one or more of the Fixed Cost Policies. Highlands now seeks to recover these payments arguing either that Halliburton must indemnify it for those payments under the relevant Spinoff documents, or alternatively that it is entitled in restitution to recover those sums it mistakenly paid on behalf of Halliburton or KBR, in order to prevent unjust enrichment.[4]

Highlands now moves for summary judgment seeking recovery of the 1987 KBR Asbestos Claim Payments and the Post–Spinoff Terminated Policy Payments. There is no issue of fact about either of the amounts claimed by Highlands. Highlands also seeks to recover from Halliburton $1,475,780.61 in legal fees and related expenses incurred in litigation.

Highlands' contractual claim rests on the October 10, 1995 Distribution Agreement, entered into in connection with the Spinoff. The Distribution Agreement generally provides that Highlands and Halliburton each is responsible for all liabilities associated with its own business operations. It also obliges Halliburton to indemnify Highlands against certain defined, post-Spinoff, losses–in particular, Halliburton Group Liabilities (as therein defined) to which Highlands may become subject.

Highlands' contract argument is that both the 1987 KBR Asbestos Claim Payments and the Post–Spinoff Terminated Policy Payments meet the definition of Halliburton Group Liabilities and are, therefore, covered by Halliburton's indemnification agreement.

Halliburton responds that Highlands is not entitled to indemnification for any payments made with respect to any claim properly allocable to one of the Fixed Cost Policies, including all of the Post–Spinoff Terminated Policy Payments and, it argues, most of the 1987 KBR Asbestos Claim Payments as well.[5] It points to a second indemnification agreement found in the January 22, 1996 Insurance Products and Services Agreement (the "IPSA"), also executed in connection with the Spinoff. The IPSA governs the ongoing and future insurance relationship between the parties and contains an indemnification clause that specifically does not extend to liabilities or losses attributable to any of the Fixed Cost Policies. Halliburton contends that the specific indemnification provisions of the IPSA, rather than the more general indemnification found in the Distribution Agreement, govern the indemnification obligations for insurance liabilities among the parties and, therefore, no indemnification obligation exists.

Halliburton also contends that Highlands is not entitled to restitution for the Post–Spinoff Terminated Policy Payments because Highlands made these payments under a mistake of law for which restitution is unavailable. Lastly, Halliburton argues that neither indemnification provision entitles Highlands to indemnification for

---

4. Highlands confines its restitution claim to the second category of payments, presumably because it believes that it had a contractual duty to make the first category of payments under one or more of the Retrospective Policies.

5. Halliburton concedes that it is responsible for indemnifying Highlands on claims allocable to the Retrospective Policies. Def. Ans. Br. at 6.

the legal fees and expenses incurred in this litigation.

### III.

Pursuant to Court of Chancery Rule 56, a motion for summary judgment should be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[6] In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party and the moving party has the burden of demonstrating that there is no material question of fact.[7]

### A. *The Distribution Agreement*

■ The Distribution Agreement executed with the Spinoff provides that Halliburton and Highlands each is to be responsible for all liabilities, past or future, arising from its own operations. Section 6.01 *Responsibility for Liabilities* of the Distribution Agreement expressly defines the liabilities that Halliburton retains after the Spinoff. Section 6.01 defines "Halliburton Group Liabilities" as:

all liabilities and obligations to any Person other than a member of the Highlands Group, known or unknown, absolute, accrued, contingent or otherwise, arising out of or associated with the business, operations and affairs of the Halliburton Group, whether conducted

prior to, as of or after the Distribution Date.[8]

Section 6.01 also specifically allocates to Halliburton those liabilities defined as Halliburton Group Liabilities, as follows:

Halliburton shall, as of the Distribution Date and as between members of the Highlands Group, on the one hand, and members of the Halliburton Group, on the other, be responsible for all ... Halliburton Group Liabilities....

The Distribution Agreement further provides for indemnification for Losses[9] arising out of or relating to liabilities allocated by that agreement to the other company. Section 8.02 *Indemnification by Halliburton* states in relevant part:

Halliburton agrees to protect, defend, indemnify and hold harmless Highlands, other members of the Highlands Group and their employees, officers, directors, agents and representatives (the "Highlands Indemnitees"), from and against any and all Losses to which any of the Highlands Indemnitees may become subject, insofar as such Losses (or Proceedings in respect thereof) arise out of, are based upon or are in whole or in part attributable to (i) any Halliburton Group Liabilities....[10]

It is evident that the 1987 KBR Asbestos Claims Payments and the Post–Spinoff Terminated Policy Payments easily fit within the definition of Halliburton Group Liabilities under the Distribution Agree-

6. *Haas v. Indian River Volunteer Fire Co.*, C.A. No. 1785, 2000 WL 1336730, at *3 (Del.Ch. Aug. 14, 2000), *aff'd*, 768 A.2d 469 (Del. 2001). *See, e.g., Williams v. Geier*, 671 A.2d 1368, 1375 (Del.1996).

7. *Tanzer v. Int'l Gen. Inds., Inc.*, 402 A.2d 382, 385 (Del.Ch.1979) (citing *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del.1977)).

8. There is a mirror-image definition of "Highlands Group Liabilities" as those arising from its own operations in Section 6.01.

9. "Losses" are defined in Section 8.01 of the Distribution Agreement as "... any and all losses, claims, damages or liabilities, joint or several...."

10. Section 8.01 of the Distribution Agreement is a mirror-image indemnity obligation imposed on Highlands with respect to Highlands Group Liabilities.

ment. Highlands made these payments with respect to claims by third parties against Halliburton for liabilities arising out of or associated with Halliburton business, operations and affairs. None of those payments related to any claim against Highlands for injury resulting from the operation of Highlands' business. Thus, a natural reading of Section 8.02 would lead to a conclusion that Halliburton must reimburse Highlands for all of these payments.

Halliburton makes three arguments to avoid this conclusion. It first argues that the issue of indemnification turns on whether these claims are allocated to the Fixed Cost or the Retrospective Policies. That issue, it contends, should be resolved in the Texas litigation because both categories of policies are governed by Texas insurance law. The court disagrees. The 2001 Decision made the issue of allocation immaterial because Halliburton is obligated to provide indemnification under either Section 8.02 (if the claims are allocated to the Fixed Cost Policy years) or pursuant to the adjustment mechanism of the Retrospective Policies (if the claims are allocated to 1987 or later.) The question is whether the 1987 KBR Asbestos Claim Payments (to the extent properly allocated to a Fixed Cost Policy year) and the Post–Spinoff Terminated Policy Payments (in their entirety) should be treated as Halliburton Group Liabilities and, therefore, encompassed within to the Section 8.02 Indemnity. The court has already concluded that they should be.

Halliburton's second argument is that the IPSA–not the Distribution Agreement–is the controlling document because the IPSA specifically governs the post-Spinoff insurance relationship between Highlands and Halliburton and the payments at issue were all made in the context of that relationship. Because the par-

ties specifically excluded the Fixed Cost Policies from Halliburton's indemnification obligations under the IPSA, the argument goes, the more general indemnity found in the Distribution Agreement should not be construed to apply to the payments at issue, all of which were made by Highlands in connection with its performance of contractual duties as Halliburton's insurer. Finally, Halliburton suggests that there is, at least, an ambiguity arising out of the existence of the two indemnity provisions that requires discovery and, perhaps, a trial to resolve.

Halliburton's argument that the IPSA should govern because it is more specific does not withstand careful analysis. The IPSA was entered into to govern the post-Spinoff, going-forward insurance relationship between the parties. The indemnification agreements incorporated in the IPSA were structured to support that continuing arrangement. In other words, KBR and Halliburton agreed to a scope of indemnity that matched their (or their subsidiaries') ongoing contractual *obligations* to Highlands. This explains why the IPSA indemnifications expressly exclude indemnification for the Fixed Cost Policies.

More importantly, this court has already determined and the Delaware Supreme Court affirmed that as a matter of law the Fixed Cost Policies terminated at the time of the Spinoff. Thus, the claims in respect of which Highlands made the payments at issue after the Spinoff were not covered by any valid or effective policy of insurance between Highlands and Halliburton, and the IPSA, which deals only with ongoing insurance policies, never had any relevance to the administration or payment of those claims. Similarly, the exclusion of "guaranteed or fixed cost basis policies that the parties thereto intended to be true insurance and not fronted insurance" from the definition of "Policy" under the IPSA in-

demnification agreements [11] is irrelevant since, after the Spinoff, the Fixed Cost Policies at issue had ceased to exist. Because the IPSA is wholly inapplicable, Halliburton's request for discovery to resolve an alleged ambiguity between the documents must be denied.

Halliburton's third argument is that, even if the indemnification provision of the Distribution Agreement applies, it is not required to indemnify Highlands for claims arising under the Fixed Cost Policies. This argument depends on Halliburton's characterization of Highlands' obligation to pay the Fixed Cost Policies as "a separate distinct contractual liability" that belongs to Highlands and therefore is not a Halliburton Group Liability. Like most of the arguments made by Halliburton, this one is impossible to reconcile with the basic holding of the 2001 Decision. Highlands made all of the payments at issue after the Spinoff, i.e., after any contractual obligations it bad under the Fixed Cost Policies had terminated. Thus, to the extent the 1987 KBR Asbestos Claim Payments are properly allocable to one of the old Fixed Cost Policy years, Highlands had no contractual duty to make those payments. Similarly, all of the Post–Spinoff Terminated Policy Payments relate to years in which this court has already found that Highlands' insurance obligations were terminated by the Spinoff. Thus, it is not true that any of the payments at issue were made pursuant to a "separate distinct contractual liability" of Highlands. On the contrary, the claims underlying the payments at issue were all made against Halliburton by persons other than Highlands for claims of injury and damage incurred by such third parties resulting from Halliburton's business operations.

Moreover, the presence or absence of insurance coverage does not change the underlying nature of liability. Halliburton always remained responsible for claims arising from its own business. Highlands merely provided insurance coverage for certain losses resulting from those operations. Section 8.02 of the Distribution Agreement clearly states that Halliburton is responsible for the liabilities that arise from its business, and likewise Highlands is responsible for its own liabilities. Since the claims paid by Highlands after the Spinoff are attributable to Halliburton, then Halliburton is responsible for indemnifying Highlands.

B. *Restitution*

■■■ Highlands argues, in the alternative, that it is entitled to an award in restitution for the amount of the Post–Spinoff Terminated Policy Payments. Restitution is an appropriate remedy where a party is unjustly enriched at the expense of another.[12] Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and

---

11. This exclusion is in the second Whereas clause of the Brown & Root Indemnification Agreement. The Brown & Root Indemnification Agreement is Exhibit B, Tab A of the IPSA.

12. *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (citing *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del.1988)). *See also Dupont Glore Forgan v. Nagy*, 1972 WL 373 (Del.Ch. Mar. 21, 1972) (awarding restitution to a party which had mistakenly delivered stock and paid dividends to defendants); *Reynolds v. Slaughter*, 541 F.2d 254, 256 (10th Cir.1976) ("Where a plaintiff has paid money in the mistaken belief that an enforceable contract exists, the plaintiff is entitled to recover the money paid, as restitution. To do otherwise would result in the unjust enrichment of the defendant.") (citations omitted).

good conscience." [13] Restitution is appropriate even when the party retaining the benefit is not a wrongdoer. [14] The remedy is recognized under both Texas and Delaware law. [15]

■ Halliburton does not dispute that Highlands made payments after the Spinoff to persons who asserted claims against Halliburton for injuries during the term of one or more of the Fixed Cost Policies. Nor does Halliburton deny that the Post–Spinoff Terminated Policy Payments were made under the mistaken belief that the Fixed Cost Policies were in effect. Nevertheless, Halliburton argues that because such a mistake is properly characterized as one of law, not one of fact, no right to restitution exists. This is so, it argues, even though Highlands had no contractual duty, either express or implied, to make those payments on behalf of Halliburton, and even though there is no equity favoring Halliburton's retention of the benefit of those payments.

Older cases dealing with restitution do distinguish between mistakes of fact (for which restitution might have been available) and mistakes of law (for which it was not). [16] Nevertheless, over the years, this dichotomy became so riddled with exceptions that it is now of little or no utility. As the Delaware Supreme Court has explained:

> Given the breadth of the exceptions to the rule that restitution is granted for a mistake of fact, but not of law, the initial determination of the nature of the mistake as factual or legal is rarely dispositive of the case. We consider the nature of the mistake as but one thread in the factual fabric of the controversy before us. [17]

Similarly, the American Law Institute in a current draft revision of the Restatement of Restitution repudiates the law/fact distinction "because it has always been theoretically unsound; because the two types of mistake are frequently impossible to distinguish as a practical matter; and because the distinction, even when it is possible, has no relevance to the real analysis by which restitution is either granted or withheld." [18] As the draft commentary states:

> If a benefit is conferred by mistake, in circumstances that would otherwise support a claim in restitution, neither the unjustified enrichment of the recipient

---

**13.** 732 A.2d at 232 (citations omitted).

**14.** *Id.*

**15.** *Id.; Pennell v. United Ins. Co.,* 150 Tex. 541, 243 S.W.2d 572 (1951); *Int'l Ins. Co. v. Jataine,* 495 S.W.2d 309 (Tex.Civ.App.1973).

**16.** Arguably, Highlands would be entitled to restitution even under the increasingly less useful distinction between mistake of fact and mistake of law because an insurer who makes "a payment under an erroneous belief induced by a mistake of fact that the terms of the insurance contract required such payment is entitled to restitution from the payee." 167 A.L.R. 470, 472 (1947). *See Int'l Ins. Co.,* 495 S.W.2d at 321 (holding that an insurance company that paid on a policy in the mistaken belief that the policy was in force could recov-

er amounts paid because its conclusion that it was legally liable to the insured on the policies is a mistake of fact).

**17.** *Home Ins. Co. v. Honaker,* 480 A.2d 652, 654 n. 2 (Del.1984) (citations omitted).

**18.** Restatement (Third) of Restitution and Unjust Enrichment, § 5 Comment (g) at 16 (Tentative Draft No. 1, 2001). *See Harnischfeger Corp. v. Harbor Ins. Co.,* 927 F.2d 974, 977–78 (7th Cir.1991) (discussing the arbitrariness of the distinction between mistake of fact and mistake of law and repudiating its usefulness); *cf.* Wanda E. Wakefield, *Recovery by Bank of Money Paid Out to Customer by Mistake,* Annotation, 10 A.L.R.4th 524 (1981) (noting a bank may recover money paid out by mistake when recovery is necessary to prevent unjust enrichment).

nor the unintentional dispossession of the transferor is affected by a determination that the mistake was one of fact, one of law, or an amalgam of the two.[19]

Thus, even if Highlands' mistaken belief that the Fixed Cost Policies remained in effect were properly characterized as a "mistake of law," this would not provide a defense to the claim in restitution in this case.[20] Restitution is appropriate here because Halliburton can show neither that Highlands agreed to accept the risk of loss stemming from the mistake nor any other circumstances, such as a change in position, that would make it inequitable to require Halliburton to make restitution.[21] It follows that Highlands is entitled to recover the Post–Spinoff Fixed Cost Policy Payments from Halliburton.

## C. Indemnification for Legal Expenses

■ Lastly, Highlands argues that under Section 8.02 of the Distribution Agreement it is entitled to indemnification for the legal expenses incurred in this litigation. Section 8.02 provides for indemnification "... in connection *with investigating or defending* any such Loss or Proceeding as such expenses are incurred."[22] This litigation seeks to enforce the terms of the Spinoff agreements and can in no way be construed as *investigating or defending* a Loss. Thus, the court concludes that Highlands is not entitled to indemnification for its legal expenses incurred with its enforcement of the terms of the Spinoff agreements.

## IV.

For all the foregoing reasons, judgment shall be entered in favor of Highlands on its claims for indemnification for: (1) the 1987 KBR Asbestos Claim Payments in the amount $4,898,321; and (2) the Post–Spinoff Terminated Policy Payments in the amount $1,968,401. Judgment is denied on Highlands' claim for indemnification for legal fees and expenses. Counsel are directed to confer upon and submit a form of final judgment no later than January 9, 2004.

---

19. Restatement (Third) of Restitution and Unjust Enrichment, § 5 Comment (g) at 16–17 (Tentative Draft No. 1, 2001).

20. The proper characterization of such a mistake under Texas law is unclear in any case. In *Pennell*, the Texas Supreme Court held that an insurer's mistaken conclusion about the amount of coverage available under its policy for a particular loss "with full knowledge of all the facts" was a mistake of law. 243 S.W.2d at 576. More recently, the Texas Court of Civil Appeals held in *International Ins. Co.* that the insurer acted under a mistake of fact when it paid on a policy that had lapsed. 495 S.W.2d at 321.

21. But see *Home Ins. Co.*, where the court did not allow restitution in the case of a unilateral mistake where defendant, who was not the insured, had changed his position in reliance on the insurer's payments. In the circumstances, the court held, that it would be inequitable to force the defendant to repay the insurer. 480 A.2d 652.

